**DIRECTOR PRODUCTS CORPORATION**

v.

**UNITED STATES.**

No. 336–54.

United States Court of Claims.

March 5, 1958.

Samuel Brodsky, New York City, for plaintiff. Alfred Miller, New York City, was on the brief.

Richard M. Roberts, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Rufus E. Stetson, Jr., and Robert Livingston, Washington, D. C., were on the brief.

WHITAKER, Judge.

This case is before us on defendant's motion for summary judgment.

Plaintiff sues to recover excise taxes levied on Norwood Director exposure

meters alleged to have been sold by it as the manufacturer thereof. The sales in question were made between September 1, 1949, and October 31, 1951.

The question presented is whether or not plaintiff was the manufacturer of the article sold. Plaintiff has filed two affidavits in opposition to defendant's motion for summary judgment which convinces us beyond doubt that plaintiff was not the manufacturer of the article sold.

The first affidavit is that of the president of plaintiff, Mr. Robert E. Brockway. In his affidavit he explains what a light exposure meter is. He says it consists of two basic components, to wit, a photoelectric cell and a microammeter, which are connected by coils and which are contained within a case, on the face of which is a calibrated scale. In addition, there is a "light collector."

He then explains the operation of a light exposure meter:

" * * * The light which the photographer wishes to measure comes through an opening to the photoelectric cell, creating an electric current which is transmitted through the coils so as to activate the microammeter. The intensity of the current varies with the intensity of the light rays. As the current passes through the microammeter, it causes an indicating needle to move across the calibrated scale thus showing the intensity of the light being measured. * * *

"The opening through which the light passes to the photoelectric cell is covered by either a perforated grid or by an attachment made of a translucent material, both of which are called 'light collectors.' The grid light collector is designed for use in measuring light reflected from the photographed object (reflected light), and the translucent light collector is designed for use in measuring light falling upon the photographed object (incident light). * * *

"During the period September 1949, through October 1951, there were on the market exposure meters capable of measuring incident light as well as reflected light. * * *"

He then describes the Norwood patent:

"The Norwood patent [which plaintiff owned] described an exposure meter which was similar in all respects to existing meters *except for the light collector attachment*. The patent calls for the usual type photoelectric cell and microammeter. The light collector is described as being made of a translucent material and having a shape which is substantially hemispherical. * * *

"Thus, the patent did not describe a new exposure meter. It simply claimed a differently shaped light collector attachment in combination with otherwise standard exposure meter components.

" * * * Without infringing the patent, anyone could have sold an exposure meter with a light collector which was either substantially more or substantially less than a hemisphere, or the surface of which was part of a nonspherical shape. Light collectors having any number of shapes would give substantially the same performance as those called for by the Norwood patent, and still be outside the limits of the patent. * * *" [Italics supplied.]

And he then describes the thing plaintiff sold:

"The Norwood meter sold by the plaintiff had three interchangeable light collecting attachments, namely, the 'photogrid', which was a perforated grid reflected light collector, the 'photodisk', which was a flat translucent incident light collector, and the 'photosphere', which was the translucent incident light collector

described above. During the period in question there were on the market a number of exposure meters capable of measuring incident as well as reflected light which were sold with interchangeable reflected and incident light collectors, such as * * *. In actuality, therefore, the Norwood meter was a conventional light meter with two conventional attachments, the photogrid, for measuring reflected light, and the photodisk, for measuring incident light. Its only distinctive feature was the third attachment, the photosphere, which could be used interchangeably with the two standard light collecting attachments.

"Most of the Norwood meters sold during the period in question were sold by plaintiff to its customers at a price of $16.48 per unit, *including the three attachments*. Plaintiff's price for the photosphere, when sold separately, was 62¢ each. * * *" [Italics supplied.]

Mr. Brockway also explains in his affidavit that plaintiff never had been other than a sales organization, selling the Bolex line of cameras and accessories and related items. It had 12 employees. As stated above, the only patent it had on the light exposure meter was on a very small part thereof, to wit, the hemispherical light collector. It had no patent on the two basic components, to wit, a photoelectric cell and a microammeter, or on the other two light collectors.

Plaintiff purchased from the Marion Electrical Instrument Company light exposure meters, which consisted primarily of the photoelectric cell and the microammeter, connected together by coils contained in a case, on the face of which was a calibrated scale. None of these were patented. A light collector was also a part of the light exposure meter. The light exposure meter ordered by plaintiff from the Marion Electrical Instrument Company came wth three different sorts of light collectors, to wit, a photogrid and a photodisk and the photosphere. The Marion Electrical Instrument Company had the right to manufacture, with or without plaintiff's permission, the complete light exposure meter using both the photogrid and the photodisk; but, if it chose to use also the photosphere, plaintiff's permission had to be obtained. Plaintiff ordered light exposure meters with all three light collectors, on only one of which it had a patent.

As plaintiff's president states in his affidavit, the retail price for the complete meter was $16.48 per unit, but the price of the photosphere, on which plaintiff had a patent, was 62 cents when sold separately.

It appears, therefore, that the thing on which plaintiff had a patent was an inconsequential part of the thing purchased by plaintiff from the Marion Electrical Instrument Company.

When the Marion Electrical Instrument Company sold the exposure materials to plaintiff, it paid the manufacturer's excise tax thereon. Defendant has also collected from plaintiff the manufacturer's excise tax, on the theory that plaintiff was the manufacturer. It is quite evident that plaintiff was not.

From the foregoing recitation of facts it is plain that the cases relied on by defendant are not in point.

Defendant's motion for summary judgment is overruled.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.